## Commonwealth v. Dishman.

## Same v. Saufley et al.

(Decided February 4, 1930.)

JAMES W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellant.

LESLIE W. MORRIS, GUY H. BRIGGS, H. H. OWENS, POLK SOUTH, JR., and KENNETH ALCORN for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Certifying the law and affirming.

E. B. Dishman was treasurer of the state for the term beginning in January, 1924. He was ex officio custodian of the securities deposited by insurance companies as required by law. Ky. Stats., sec. 648. It was provided by statute (section 762) that the treasurer should be paid annually "from the fund out of which the insurance commissioner is paid, the sum of six hundred dollars for the services to be rendered by him under and pursuant to the provision" of the chapter. In 1924 the General Assembly enacted "that the salaries of the Insurance Commissioner, Deputy Insurance Commissioner, the Clerical and Actuarial Assistants of the Insurance Department be fixed by the Auditor of Public

Accounts, the total amount of which salaries together with all other expenses of the Insurance Department shall be paid . . . by insurance companies, but the amount . . . shall not exceed $21,000 in any one year. The salaries and expenses shall be paid monthly out of the Treasury of the Commonwealth out of the insurance fund in the same manner as other salaries are paid by warrant of the Auditor upon voucher signed by the Insurance Commissioner." Chapter 126, Acts of 1924, p. 456. The Budget Act of 1924 (chapter 113, sec. 24, p. 381) provided, respecting the insurance department: "There is hereby set aside and appropriated to the use of the Insurance Department, for the fiscal year ending June 30, 1926, for the payment of salaries and all other expenses of maintenance and operation of said department, as now provided by law, or as may hereafter be provided by law, all the fees and collections to which said department is now entitled by law, or hereafter may be entitled by law."

After the new legislation became effective in July, 1924, Dishman was paid $100 per month for his services as custodian of the insurance securities. It was paid as salary in the regular way. The grand jury returned an indictment against Dishman accusing him of feloniously misapplying and misappropriating money received by him for safe-keeping on behalf of the commonwealth of Kentucky, and described the act as follows:

"That said E. B. Dishman in the county of Franklin, on the ——— day of September, 1925, and before the finding of this indictment and at a time while he was the duly elected, qualified and acting treasurer of the Commonwealth of Kentucky, caused or allowed his name to be carried on the payroll or salary list in the Department of the Insurance Commissioner of the Commonwealth of Kentucky, for the month of September, 1925, for the sum of $100.-00, when he was legally entitled to receive only $50.00 of said amount; and that thereafter, when the warrant of the Auditor of Public Accounts was presented to him for payment, which warrant was numbered F 1739, dated September 26th, 1925, and in the sum of $2206.66, and was drawn for the purpose of paying the salaries of the duly appointed, qualified and acting employees of said Department, drew a check as Treasurer of the Commonwealth

of Kentucky, payable to himself, in the sum of $100.00, which check was numbered 10788, and dated September 28th, 1925, and which check he cashed or caused to be cashed, and did thereby unlawfully, wilfully and feloniously, and without lawful authority, receive the sum of $50.00 of good and lawful money of the United States in the value of $50.00, belonging to, and the property of, the Commonwealth of Kentucky."

At the same time an indictment was returned against Shelton M. Saufley, the insurance commissioner, and E. B. Dishman, the treasurer, accusing them of feloniously confederating or banding themselves together for the purposes of doing a felonious act, which act consisted of a payment by the insurance commissioner, through the regular channels, of a salary of $100 to Dishman, as treasurer, when he was entitled to a salary of only $50. The circuit court sustained demurrers to both indictments, and they were dismissed. The commonwealth appeals for a certification of the law.

The case for the commonwealth is built upon an argument to the effect that the salary of the treasurer as custodian of the securities for the insurance department was fixed at $50 per month, and the act of Dishman in accepting a salary of $100 per month, when he was legally entitled to but one-half of that sum, constituted the crime of embezzlement denounced by sections 1205 and 1206, Kentucky Statutes. The joint indictment against Saufley and Dishman is sought to be sustained upon the theory that the payment of the salary to Dishman was a felonious act by virtue of sections 1205 and 1206, Kentucky Statutes, and the payment made pursuant to a conspiracy or agreement between the officers, was in violation of section 1241a-1, Kentucky Statutes, as construed by this court in the cases of Phelps v. Commonwealth, 209 Ky. 318, 272 S. W. 743, and Eubank v. Commonwealth, 210 Ky. 150, 275 S. W. 639. The appellees answer that, in the first place, the payment of the salary in the regular way was not a felonious act, regardless of whether the old or new statute respecting the salary applied; and, in the next place, section 1241a-1 is unconstitutional if given the broad construction contended for by the commonwealth, because the title to that act did not embrace the commission of any felonious act; but its operation was limited to certain specific things,

and therefore confined by section 51 of the Constitution to the things specified in the title; and, finally, that the payment of the salary to Dishman was not unauthorized by, but was in accordance with the Acts of 1924 then controlling the matter. Our conclusion concerning the primary postulate of the case for the commonwealth renders it unnecessary to consider or determine any of the further propositions of either party.

The provisions of the Kentucky Statutes invoked are as follows:

"Sec. 1205. If any person having the custody, control or distinct possession of any money, bank notes, county, city or town bonds, or Kentucky State bonds, or United States bonds, or treasury notes, legal tender notes, promissory notes, property effects, or other movable thing of value belonging to or for the use of the state, or of any county or dis- trict of a county, or of any municipal corporation, and under any trust or duty to keep, return, deliver, cancel, destroy or specifically apply the same, or any part thereof, shall in violation of such trust or duty, willfully misapply, misappropriate, conceal, use, loan or otherwise wrongfully and fraudulently dis- pose of such money, bank notes, county, city or town bonds, state bonds, United States bonds or treasury notes, legal tender notes, promissory notes, prop- erty, effects or other movable thing of value or any part thereof, for his own purposes or use of another, with intent to deprive the owner of authority of the same, or of any part thereof, for the benefit of the wrongdoer or of any other person, such person so offending shall be confined in the penitentiary not less than one nor more than ten years.

"Sec. 1206. Any person who shall improperly, or without lawful authority, receive any of the things mentioned in the preceding section, and shall willfully and fraudulently misapply or misappropri- ate the same, shall be confined in the penitentiary not less than one nor more than ten years."

It will be noted that these statutes provide a pun- ishment for any person having the custody, control, or possession of the property therein described, who shall, in violation of his duty respecting the matter, misappro- priate, misapply, or fraudulently dispose of them for his own purposes. or the purposes of another. They are

designed to punish the crime of embezzlement. Smedley v. Com., 138 Ky. 1, 127 S. W. 485, 129 S. W. 547. Section 1206 merely broadens the application of the other section so as to include any person who may wrongfully receive the property so fraudulently misappropriated. The securities intrusted to Dishman were not embezzled, but were faithfully preserved and accurately accounted for to his successor. The payment or acceptance of salaries duly authorized by the official vouchers of those charged with the duty of administering the law was not a criminal offense. If illegal, the commonwealth had a remedy to recover the payment, but the payment of the salary possessed none of the essential elements of a crime. It was not a fraudulent act. It was not a violation of any trust or duty respecting the securities. It was not the sinister appropriation of the public funds. It is argued, however, that the indictment charged the appellees with the crime of willfully, feloniously, and unlawfully, appropriating to their own use money of the commonwealth intrusted to their care, and upon demurrer thereto the statements of the indictment must be taken as true. But an indictment is required to state the facts upon which the accusation is based, and, if the facts stated do not constitute the crime named, or any crime, the characterization of such acts as felonious does not make the indictment good. Mere characterization is not enough. It is indispensable to a good indictment that it shall state the particular facts and circumstances which the accused committed and which the commonwealth expects to prove; and, when the facts charged, if proven, would not constitute the offense, they are not sufficient to withstand a demurrer to the indictment. Elliott v. Com., 194 Ky. 576, 240 S. W. 61; Forman v. Com., 195 Ky. 758, 243 S W. 1043. An indictment, in its accusative part, must state the public offense for which it is intended to present the accused, and, in its descriptive part, must state the facts which, if established by the proof, constitute the offense charged. Commonwealth v. Tobin, 140 Ky. 261, 130 S. W. 1116; Deaton v. Com., 220 Ky. 343, 295 S. W. 167; Middleton v. Com., 226 Ky. 220, 10 S. W. (2d) 812. The facts stated respecting the payment of the salary of Dishman are not sufficient to support a charge of embezzlement or other felonious act. The most that could be said respecting it was that an error of judgment was committed in interpreting the law as to the amount of salary

properly payable. It was not an act pertaining to the duties or responsibility of the treasurer as custodian of the securities for the insurance department. There was no purpose to convert to his own use, or the use of another, anything intrusted to his care. Whether the officials were right or wrong in the interpretation of the law should be determined in a civil action, if the commonwealth conceived that the payment was illegal or unauthorized. The commonwealth has not yet determined to subject its officers to a criminal punishment for an erroneous judgment as to the construction of several statutes. In no view of the cases presented were the facts sufficient to constitute a violation of the statutes relied upon by the commonwealth.

Since the fundamental basis of the whole structure is unsound, it necessarily follows that the circuit court was correct in sustaining the demurrers to the indictments, and it becomes unnecessary to consider any other question.

The law is accordingly so certified, and the judgments affirmed.